call the first case, which is Great Lakes Insurance v. the Crabtrees, 23-12-020. And Stephanie, before we start the clock, Mr. Goldman, nothing that I say here bears on the merits of your appeal. You'll have your full time. You'll have our full attention in short order. But first, and I suspect you may know where this is going, we need to take care of a house keeping item. And I'll warn you, this is going to be uncomfortable. I'm prepared for it, Your Honor, and I already know I think you're completely right. In almost 10 years as a judge, I've never disciplined or sanctioned a lawyer. It's not my style. I'm a lover, not a fighter. But in 10 years as a judge, I have never seen such a stunning lack of civility and professionalism in written or oral advocacy. Among the ad hominems that you tossed around in your brief were shots at Judge Altman for being cute and hilarious, not taking the case seriously, at your opposing counsel for skipping the day in law school when they discussed a particular matter, and on and on and on. It's simply not acceptable. Now, I recognize, of course, that you sought to withdraw the offensive briefs and replace them with less offensive briefs, but some five months after the case was submitted. That was too little, too late. I just want to be clear that the sort of rhetoric that you engaged in in this case is totally unacceptable. It's beneath the dignity of the court. It's beneath the dignity of any officer of the court, and we won't tolerate it. You're a member of this court's bar. When you became a member of the bar, you may not recall, but you promised, among other things, to conduct yourself uprightly, and I think we can agree that the written submissions in this case were anything but. We do agree, Your Honor. The only silver lining that I've found in the tone of the filings in this case is that I have used them as object lessons for my law clerks about what not to do, how not to conduct themselves when they become practicing lawyers. No decision has been made, but the court reserves the prerogative to impose a sanction or some form of discipline in this case, and I just want you to be aware of that. Thank you, Your Honor. Is there anything that my co-panelists wish to add? No. Okay. With that unpleasantness out of the way, let's get to the merits of this interesting appeal. You have 13 minutes. You have reserved two minutes for rebuttal, so let's go. Since I don't need to go much into the facts, Your Honor, I can cut straight to what we think the heart of this is. We believe that this appeal turns on one fact, one point of law, and one question. The fact is this. We are here, and I don't wish to be inflammatory, but this is a part of the record, Your Honor, that we're here because of the gamesmanship of opposing counsel. That is the finding of the District Court in Montana. I thought you might start there, and my question to you is how is it gamesmanship on the part of opposing counsel when you control the game? You control where the case is going to be filed, so tell me how that's gamesmanship. Because at every point in this matter, Your Honor, everything we've done procedurally has been either to comply with the policy's mandatory form selection clause or to move the case to a venue that was more convenient for the parties. That explains our initial filing in Montana, Your Honor. From the application on the insurance policy, we were given an address in Montana, but also knew that there was a residence in Georgia. That means the federal District Court in Montana was proper, and possibly Georgia. We didn't know an address, Your Honor. The policy was issued with the Montana address, and then after the loss occurred, the Crabtrees gave us the Montana address. We believed at every point that when we were deciding where to file, we believed we were complying with the policy's mandatory form selection clause. Nothing is more certain under federal admiralty law than that these clauses are valid and enforceable. Here in the 11th Circuit, Your Honor, you enforce the cruise ship industry's form selection clause, which requires everyone in America to come all the way to the Southern District of Florida if they slip and fall on a cruise ship in the Caribbean. Sure, so you filed in Montana. We filed in Montana. Then we refiled in Florida for the convenience of the parties, and if I may read, if you don't mind, Your Honor, opposing counsel's representations to us, strictly for the convenience of the parties and their attorneys, because none of the Goldman's are admitted in Montana, Your Honor. My firm agrees to accept service provided the case is dismissed and the complaint is refiled in the Southern District of Florida. Please just refile in the Southern District, send me the complaint, and let's move this matter forward. The only time we didn't do what the form selection clause required was when we believed we were doing what would be for the convenience of both sides, Your Honor, to make litigation easier and less expensive. So let me just ask you, so we can get to the legal issues in the case. Is it your contention that there is, in effect, a gamesmanship exception to Rule 41? Or is it your contention that, no, no, no, Rule 41 applies, but there is, in effect, a gamesmanship exception to the follow-on question of res judicata? Your brief seems to say both things at different times. We contend, I'll get to why it says both, because it's a little confusing based on some of the case law from the 2nd and the 9th, but we contend that we admit we have a judgment on the merits under Rule 41. Rule 41 doesn't say any exceptions. It simply says two voluntary dismissals, and that's what we have here. We contend that res judicata has multiple elements and multiple exceptions, Your Honor. The one we're asking for here is the one that we believe has been recognized by the 2nd and the 9th, which is that res judicata will not apply in the case where the two-dismissal rule is triggered, two voluntary dismissals. Res judicata will not apply where one of those dismissals is by agreement between the parties,  Let me ask you this, though. I'm not even sure that I'm convinced that we need to get all the way to res judicata in this case, because Rule 41 itself, at least as construed by the Supreme Court, the Supreme Court says in a case called Cooter and Jell v. Hartmarks, if the plaintiff invokes Rule 41A a second time for an action based on or including the same claim, it must be dismissed with prejudice. It doesn't really say, then it's an adjudication on the merits, like 41 says. It sort of glosses 41 and says it's an adjudication on, sorry, it's a dismissal with prejudice. Then in a case in 2001, a case called Symtek v. Lockheed Martin, which no one here has really talked about that I just remembered from a past life, Supreme Court says effectively the same thing. They're dealing with 41B, but the identical language says the adjudication on the merits language means that if the second action is refiled in the same court, then there is a dismissal with prejudice and we really don't even bother with res judicata. Here the third action, in effect, is filed in the Southern District of Florida where the second dismissal occurred. So why under Cooter and Jell and Symtek is what the Supreme Court has said, sort of glossing 41 that this is a dismissal with prejudice. Why isn't that conclusive? I'm not sure I can answer that directly, Your Honor, only because I'm not familiar specifically with those cases. Yeah, and I'm not, I don't mean this to be a quiz show, so you don't have to follow me on the cases, but what about the dismissal with prejudice principle, let's call it? I think the cases that we contend apply here, Your Honor, including what I think is binding precedent from the Fifth, recognize even outside the Rule 41 context, these cases say that a judgment on the merits itself is not sufficient, that you then still go to res judicata and that's exceptions. And I refer you to the Mock case, Your Honor, that's a Fifth Circuit case which predates 81, so it's binding here in the 11th until it's reconsidered. In that case, Your Honor, a district court dismissed under 12b6, which is a judgment on the merits. But in that case, the Fifth Circuit held that the judgment on the merits wasn't enough. It then had to consider exceptions to res judicata, and in that case, it recognized what we think is one of the numerous exceptions, that where there's a recent change in the law, the 12b6 judgment on the merits should be reversed because there would be manifest injustice in that case, Your Honor. But so I guess just sort of humor me and grant me that there might be something different between res judicata and a dismissal with prejudice in the same court. If we are, for purposes of this third filing, in the same court, everything has effectively has happened in the Southern District of Florida, why isn't the Southern District of Florida entitled to dismiss your case with prejudice? Res judicata might or might not work if you try to refile in the District of Montana. Now maybe we're going to fight about res judicata and the exceptions or whatever, but if we're in the same court, why isn't the dismissal with prejudice analysis from these cases binding? I don't, unless I'm misunderstanding, Your Honor, I don't think we're contest or… With prejudice means you can't refile. What if we say we do have a dismissal with prejudice, whether you call it a dismissal with prejudice, judgment on the merits, I don't think there's a difference there, Your Honor. So you cannot refile in the Southern District of Florida, do you agree with that? I think that is correct, Your Honor. So then should we be deciding anything about res judicata? Doesn't the receiving court, so to speak, decide the res judicata effect? Like we shouldn't res judicata but be decided by the next court in which you try to file this lawsuit? Excuse me, Your Honor. The clerk told me I could ask my partner and my partner seems to have the answer to this one.  Yeah, that's totally fine. He's the smarter one. My partner reminded me, I think the reason we're back here in Florida, Your Honor, is not because we refiled in Florida. It's because we transferred to Florida after we refiled in Montana, Your Honor. Does that answer your question about why we're back here? Because again, we're only here because of the convenience of the parties. In this case, we agreed to a transfer rather than a dismissal the second time around. Yeah, maybe, maybe. Okay, well, I don't mean to hijack your argument. Go ahead. Go for it. I'll just keep rolling through it then, Your Honor. The question is this. In light of what we think is the difference between a rule, a judgment on the merits under Rule 41 and res judicata, then we'd ask this. The doctrine itself we don't think is served by not recognizing the exception that exists in the second and the ninth. So we put the question is why make a circuit split? We believe a circuit split isn't justified just in order to reward what the district court has already found is the gamesmanship of the opposing party, Your Honor. So are you defending then embracing the Second Circuit's interpretation of Rule 41? This is when I get kind of confused in your briefs because at times you seem to acknowledge that 41 applies, but that the follow-on conclusion of res judicata doesn't apply because as you say there are lots of exceptions to that kind of common law doctrine. But then at times you seem to say Rule 41 doesn't apply. See the Second Circuit. So do you embrace, defend the Second Circuit's interpretation of Rule 41? No. We think the Second Circuit got it slightly wrong in looking at Rule 41 rather than res judicata. The court said it wasn't going to strictly enforce Rule 41 because it wouldn't serve the purpose of the rule. No one was being protected from harassment. No one was trying to steal a march or gain some sort of advantage by multiple voluntary dismissals. So the court simply found that it would be fairer and more just to not strictly enforce the rule of Rule 41. We believe that is correct and that the courts have the power to do that, that they don't have to mechanically apply Rule 41 because under the doctrine of res judicata, a judgment on the merits is only the first element. So you acknowledge that this is same claim, same parties, right? Absolutely, Your Honor. Okay, so at least in my understanding of sort of the typical three or four elements of res judicata, we've got them. So what you need to find is some other sort of exception that sort of is alien to those three or four core elements. Yes, that is absolutely correct, Your Honor. And we believe that the case law we've cited proves courts commonly recognize exceptions to res judicata. There are exceptions for certain types of declaratory judgment. As in the mock case, there are exceptions for where there's a very recent change in the law. There's simply a manifest injustice exception. Courts are free to re-examine when the strict enforcement of the doctrine would rob a party of their full and fair opportunity to litigate on the merits. And that is what we believe is the decisive issue here. Through strict, without, if you don't look at any exceptions, Your Honor, Great Lakes is going to be robbed of its opportunity for a full and fair adjudication on the merits. If you rule for the Crabtrees, they get to win on a technicality which was the result of their false representations to us in order to obtain a forum that was more convenient for both parties. If you recognize the exception from the second and the ninth, Your Honor, all that happens is we go back to the district court and everybody gets to pursue their claim on the merits,  and that's why we believe that that is the more obviously just outcome. Why did you file the action in Montana the second time rather than just transfer it from the Southern District of Florida? Because under the Forum Selection Clause, as long as they were opposing the Florida District Court action, which they were because they filed in the Florida State Court, Your Honor, the Forum Selection Clause when they file in state court, without their consent to the Florida District Court action, the action there was a violation of the Forum Selection Clause. Our case was only dismissed and moved there because we thought we were doing it with the agreement of the parties. When we realized that their agreement was a sham, Your Honor, we realized we couldn't maintain the Southern District of Florida action. It was a breach of our own Forum Selection Clause. So again, we tried to move it to what we thought was a compliant forum. And let me add one more thing. At that point, we also knew, Your Honor, that the actual boat owner wasn't even the Crabtrees. It was an entity called Big Bass LLC, which was incorporated, I think you can guess where, Your Honor, in Montana. So faced with the fact that our second deck action was a clear violation of the Forum Selection Clause, we thought we had to dismiss. You could have put all of that in a motion to transfer a venue, couldn't you? And then the district judge could have transferred it to Montana for the reasons that you stated in the motion. Yes, we could have done that, Your Honor. We thought that what we were doing was in compliance with the rule of the second and the ninth, that we were permitted to do that, Your Honor. That's all. I don't deny. We could have done that as well, Your Honor. I'm going to do you a favor. Your partner wants to tell you something. Thank you, Your Honor. Unless the court wants to keep asking questions, my partner did just remind me there is the law of the case doctrine to discuss, but only if Your Honors want to hear a very brief argument on the subject. But that was all she had to remind me of. Very well. All right. So good. I think we've got your argument. You've got some rebuttal time coming. Let's hear from the appellee. Thank you, Your Honors. Mr. Piccola? Yes. May it please the Court. Let's start with the venue in Montana problem because if you look at the first page of the application for insurance, it clearly states that the Crabtrees reside in Georgia. And it clearly states that their mailing address is in Montana, that they're listing on the policy. So, in order to get venue, according to the venue selection clause, GLI had to misrepresent to the Montana court, not once, but twice, that the Crabtrees were residing in Montana. Otherwise, they were in violation of the venue selection clause. So, it's not only that it was the wrong venue, but that it was obtained, the venue was filed there because of a misrepresentation as to where the Crabtrees actually lived. And they knew where the Crabtrees lived. They knew the address because shortly after filing the first Montana action, they proceeded to attempt to serve the Crabtrees at their condominium unit in Georgia. So, it's a little bit disingenuous for them to say, well, you know, they list an address. They've said many, many times. They've repeated this contention that, well, they listed an address in Montana. Yeah, okay. But they knew that where the Crabtrees actually lived. And so, there was a little, some deception involved there. The other thing on the facts of the case that I'd like to highlight a little bit is the fact that when this agreement was entered into between the parties about refiling the case in the Southern District of Florida, it's just interesting to note that at that point in time, the Crabtrees had not been served with process. They were not a party to the Montana action. If you look at the Polaron case and other cases that have followed Polaron, in the Polaron case, they actually had a stipulation of the parties. In other cases that I've seen, there's, Polaron has been extended a little bit to informal agreements between the parties. But I have not seen a single case that has applied Polaron against a person who was not, I mean, not against, but when the situation was that there was an agreement with someone who was not even a party to the case. That seems to be an extension of Polaron beyond what really can be justified. Because if you think about it, the Crabtrees are sitting in Georgia. They have an attorney in Florida. Everything connected with the loss occurred in Florida. And they're being sued in Montana in the wrong venue. So, of course, their attorney says, of course, we don't want to be sued in Montana. The proper venue here would either be in Georgia or for the convenience of the parties because of the, that all the evidence is here, the loss occurred here in Florida. And also, honestly, because counsel was here in Florida, but that's just another factor. But because of all those things, it made sense to litigate in the Southern District of Florida. And so by, you know, this agreement to accept service of process in the Southern District of Florida, I don't think at that point in time that the Crabtrees really had any say in what happened to the Montana case. Their only interest was, okay, let's litigate this in Florida, which makes sense, and both sides agreed to that, but not being an actual formal party to the Montana case, I'm talking about the first Montana case, what say did the Crabtrees actually have and whether that case was to be dismissed? And not being a party to the Montana case was not the dismissal of that case by definition unilateral within the meaning of Polaron and similar cases. Polaron has already engrafted something into the rule that plainly is not there. Even in the Polaron decision itself, you can see that they talk about, yes, the literal application says one thing, but we think that we need to interpret it a different way because the purposes underlying the rule would not be served if we apply its literal text. It's kind of an interesting thing. I think Polaron has been an influential case in federal jurisprudence. However, the fact remains, and there's really no disagreement here among the parties to this appeal, that if you apply the literal text of the two-dismissal rule, rule 41A, that the result is correct, that was reached by Judge Christensen. I'm sorry, by Judge Altman. So we have a Polaron problem. The court has to in some way deal with Polaron. In fairness to their position, they say, I think, at least maybe in the alternative, we'll spot your rule 41, the adjudication on the merits, but that's only one element among others for res judicata, and that's where we really want to wage our war is in res judicata because it's multi-factor and squishy. I mean, rule 41 is pretty clear, I think, and so I think at the end of the day, they're going to say, okay, uncle, you've got 41, but now let's talk about res judicata. I think it's all about 41. I don't see how res judicata has any role in this decision. And is that because the action is, was now before the same court, namely the Southern District of Florida, in which the second dismissal had already occurred for sort of the cooter and gel, sim tech reasons that I was describing earlier, that like res judicata really never comes into play? The only question for the Southern District of Florida is whether or not there is a dismissal with prejudice, and there was. Honestly, I don't know the answer to that question. It had not occurred to me because it seemed to me that the application of res judicata, if it is to come into play, was virtually automatic in this case. And there was never any contention below about a manifest injustice exception to res judicata. So this never came up at the trial court level. For them to raise it now on appeal, I mean, manifest justice, that wasn't even considered by the trial judge, and rightfully so, because it was never raised. So as a result, that's to me, res judicata is not really an issue. They did make an argument below about the purposes of res judicata and whatnot, but they never mentioned manifest injustice exception. Let me ask you, maybe, maybe get at it this way. What if this like third stage of the litigation hadn't occurred in the Southern District of Florida, but in the Western District of North Carolina or something? At that point, the language that I've been quoting from these Supreme Court cases about there being a dismissal with prejudice might not work. At that point, do you have to fight res judicata because you're in some other court? I think so, yes. Okay. And I think it's a little bit more complicated in this case because they did file in Montana and then transfer it to Florida. But still, I mean, everyone knows that when you have a dismissal with prejudice, you can't refile the same case, as you said, in that court. At least in the same court. In the same court. And I guess what they would say is, well, we didn't file it in the same court, but maybe the principle is you can't litigate it in that court. Like, it's not a cognizable claim in that. Exactly. Kind of amounts to the same thing, in my view.  So, you know, so you have the literal text issue. Then you have the issue of whether it was a unilateral dismissal, which we contend that it was unilateral. The first dismissal in Montana was a unilateral dismissal. Then you have the issue of, even if you assume that Polaron is the applicable law, you still have the issue of whether there was some kind of abuse of the right to voluntarily dismiss. Our contention on that is that, yes, the problem was that they filed in the wrong venue in Montana, not once, but twice. Not once, but twice they misrepresented where the Crabtrees lived. They misrepresented the court the Crabtrees were evading service of process, which there's no evidence of. They transferred back to Fort Lauderdale after having done this eccentric, let's say, decision to refile in Montana the second time. They then agree, okay, after a year of being in Montana, they agree, okay, let's go back to Fort Lauderdale, or let's go back to Southern District of Florida. It just, the whole thing just was, it was kind of reckless. There was unprofessional conduct involving ad hominem attacks against opposing counsel. There was mischaracterizations of what was actually happening, where people lived, imputing bad intent to the Crabtrees and their counsel. That was not justified. This filing of the action in state court in Florida, I think the thinking on the Crabtrees counsel at the time, we have state claims to raise against other parties. They had claims like negligent maintenance of the premises and whatnot, without getting too much into detail, it's not really too relevant, but they did have claims, state law claims against other parties. Their thinking was that let's litigate that in state court. However, they did not, Crabtrees counsel did not violate the so-called agreement that they had about transferring the case or dismissing in Montana and refiling in Southern District. The only agreement they specifically said, we're not going to answer the complaint. The only thing they said is that they would respond to it, which they did. I don't think that anything that the Crabtrees or the counsel did justified this decision to go back to Montana and then go back to Southern District of Florida again. So in short, I think that the facts of this case would justify the exception to the exception under Polaron. And one thing I'll point out about the interpretation of Polaron in similar cases is that, of course, if you're interpreting the rule itself, Polaron and many other cases say you would kind of strictly construe the rule. However, if you are interpreting a judge-made exception to the rule, you should construe that exception to the exception even stricter than you would construe the rule because Congress didn't say anything about a unilateral voluntary dismissal exception. So if courts are going to engraft that exception onto the rule, that should really be very narrowly construed in terms of giving more deference to the rule than to a court-made exception. So I think that this court has different options in terms of how to resolve this case. One would be, of course, to just disagree with Polaron. Another would be to distinguish Polaron. Another would be to embrace Polaron but say that Polaron doesn't apply because of the exception to the exception. So I don't think that I have anything else. I would just mention I have already said that there was no contention below about manifest injustice. Council wants to talk about the law of the case doctrine. I think Judge Altman addressed that. I think it was within his discretion to reconsider Judge Christensen's ruling, which was not on a summary judgment. It was on a, not even raised as a motion to dismiss. It was the Crabtree's pro se reply in support of their motion to dismiss was how it was raised. And Judge Christensen in Montana allowed GLI to respond to that. The Crabtrees didn't have counsel, didn't have the opportunity to respond to some of the things that were said at the time. And the crucial thing here is that Judge Christensen didn't have crucial information when he made that decision. It wasn't summary judgment so there was no evidence, there was no record as there was before the Southern District. But not being, not having any evidence, not having, just relying on GLI's counsel's representations and not knowing, this is crucial, he didn't know that he had been lied to about where the Crabtrees lived and that they were evading service of process. There were misrepresentations about bad intent on the part of the Crabtrees' counsel and luring them to the state of Florida, you know, so they could litigate in state court. And there's just, none of these things are supported by facts or evidence or the record in any way, shape, or form. And Judge Altman was able to look at the entire picture and see what actually occurred. He determined as a matter of law that the two dismissal rule should be applied as written, but he could not help but have been influenced by facts that were in his possession that were not in the possession of Judge Christensen in Montana. So I think it was well within his discretion to reconsider that interlocutory ruling. No other questions. I appreciate the court's time. Okay, very well. Thank you so much. Mr. Goldman, you've got two minutes remaining. I just want to say only one, two, excuse me, two quick points, Your Honor. First of all, manifest judgment, manifest injustice was raised below in opposition to the Crabtrees' motion to dismiss, Your Honor. So that hadn't been waived in the district court, Your Honor. If the representations of opposing counsel are correct that the, that we should have known, that we should have filed in Georgia, Your Honor, then that doesn't explain why they elected to file in Florida in violation of the Form Selection Clause, Your Honor. I'd also like to add under federal admiralty law and the statute pertaining to supplemental jurisdiction, Your Honor, federal district court, whether in Montana or in Georgia, would have had subject matter jurisdiction over, excuse me, over not, there are no limitations on diversity of parties when federal admiralty law, when federal admiralty jurisdiction is invoked, Your Honor. So any other court could have had subject matter jurisdiction over additional claims. And second, Your Honor, none of those additional claims are central to the insurance policy dispute that was at stake in the case, Your Honor. There's no reason the two had to be joined, Your Honor. That's all I have, Your Honor, unless you have any questions. Very well. Thank you. That case is submitted. And we'll move to the second case of the day, which is Mendoza v. Aetna.